**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS BON STOUT,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. CIV-07-20-HE** |
| **OFFICER COOK, et al.,** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Officials from the Oklahoma County Detention Center and the Oklahoma Department of Corrections submitted special reports pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). Thereafter, the Defendants who have appeared in this action filed motions to dismiss/motions for summary judgment to which Plaintiff has responded.[1] Thus, the motions are now at issue. For the following reasons, it is recommended that the motions, considered as motions for summary judgment, be granted.

By this action, Plaintiff sues several people, in both their individual and official capacities, and entities for acts and omissions that occurred during his confinement at the Oklahoma County Detention Center ("the Jail"). Specifically, Plaintiff sues Oklahoma

---

[1] The undersigned has considered the additional response Plaintiff submitted as an attachment to his Doc. No. 75 motion "Requesting The Honorable Courts to Allow Plaintiff to add additional response to Defendants Oklahoma County, Sheriff John Whetsel, Willis[,] Findley's Motion for Summary Judgement [sic] and Brief in Support."

County, Sheriff John Whetsel, two former Jail detention officers, Dustin Cook and Justin Pittman, Lt. Chris Finley, a shift supervisor at the Jail and Cpl. Willis, a detention officer at the Jail. Amended Complaint, pp. 1-2.[2] Plaintiff also sues the Oklahoma Department of Corrections ("DOC"), and two of its employees, Scott Crow, the Deputy Director of the Security and Investigation Division of the DOC, and Dennis Cunningham, the DOC's private prisons administrator. Id. at 2. Additionally, Plaintiff sues David Miller, the Warden of the Lawton Correctional Facility ("LCF"), a private prison administered by the GEO Group, Inc., and contracted to house DOC inmates. Id.

Plaintiff's three-count complaint alleges several constitutional violations. In Count I, Plaintiff complains that on July 30, 2005, Officer Cook assaulted him in violation of his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishments. Id. at 5-6. Plaintiff claims that Officer Pittman witnessed Officer Cook's assault and taunted him afterwards. Id. at 6.

In Count II, Plaintiff alleges that Lt. Finley denied him due process when he took Plaintiff's statement about Officer Cook's assault and "wrote down what happened in his own words" that did not accurately reflect what occurred. Amended Complaint, p. 7. Plaintiff contends that Lt. Finley assisted Officers Cook and Pittman in the perpetration of the assault by filling out the incident report in his own words. Id. at 7-8. Plaintiff avers further that Lt. Finley and Cpl. Willis were responsible for having him moved to the administrative segregation floor of the Jail. Id.

---

[2] The amended complaint contains a page numbering system that is difficult to follow. Accordingly, the undersigned has hand counted the pages of the petition and cites to them by their physical order.

In the administrative segregation unit, Plaintiff contends he was subjected to unsafe living conditions including five-day lockdowns without access to a shower, cold food, "short" food trays, lack of access to a law library, exposure to insects, inoperable toilets, overcharges for stamps, "deprivation of basic sanitation supplies by not providing toilet paper when it runs out," and "filthy cell conditions by not providing cleaning supplies on a regular schedule." Id. at 8-9. Petitioner alleges that Sheriff Whetsel had responsibility for the policies at the Jail during the relevant time frame and that he was deliberately indifferent to conditions at the Jail and displayed his deliberate indifference by "not protecting Plaintiff against conditions that caused harm and posed unreasonable risk of future harm . . . ." Id. at 8. Plaintiff further contends that Oklahoma County was aware of the conditions at the Jail and "failed to intervene" on Plaintiff's behalf which led to violations of his Fifth, Eighth, and Fourteenth Amendment rights by Oklahoma County employees, including Sheriff Whetsel. Id. at 9. Additionally, in Count II, Plaintiff contends that an unnamed Oklahoma County detention officer ("Officer Doe") assaulted him after he was released from administrative segregation into the general population. Id. at 11.

Finally, in support of Count III, Plaintiff alleges that Director Crow and Administrator Cunningham were deliberately indifferent to the risk of retaliation that Plaintiff faced by remaining at the Jail and failed to protect him from this risk by moving him to another facility. Id. at 13. Plaintiff also claims that Warden Miller is responsible for "not inquiring after the welfare of Plaintiff which would have kept [him] from being further injured due to conditions of the [Jail]." Id. Plaintiff apparently also lost items of

personal property and contends that Warden Miller bears responsibility for this loss because he is "the policy maker at [LCF] [and] created the circumstances which allowed GEO officers to seize Plaintiff's property . . . ." Id. Plaintiff seeks a declaratory judgment, injunctive relief, and monetary relief, including punitive damages. Id. at 18.

Each of the Defendants who have filed a dispositive motion have asserted numerous arguments in support of their motions, including the fact that the Plaintiff has not exhausted his administrative remedies.

## A. STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and evidentiary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Instead, the moving party initially bears the burden only of "showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (internal quotations omitted). Once the moving party has satisfied this

burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleadings to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted).

When raising an affirmative defense in a motion for summary judgment, "[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." Id. "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." Id. Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden to plead and prove. Jones v. Bock, 127 S. Ct. 910, 921 (2007); see Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The Prison Litigation Reform Act ("PLRA") provides in relevant part: "[n]o action shall be brought with respect to prison conditions under [section 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion

requirement is mandatory and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA requires "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with "an agency's deadlines and other critical procedural rules." Id. at 2386; accord Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (finding that substantial compliance with exhaustion requirements was insufficient). Accordingly, whether a claim is properly exhausted is evaluated by reference to the prison's procedures for addressing the particular claim at issue. Jones, 127 S. Ct. at 923. Thus, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan, 304 F.3d at 1032.

**C. FACTS**

The relevant facts recited herein are derived from the summary judgment evidence submitted by the parties. The Defendants' statements of facts are deemed admitted by Plaintiff's failure to specifically controvert them in his responses. See LCvR56.1(b). The Special Report has been treated as an affidavit. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining the role of a Special Report in summary judgment proceedings). The affidavits Plaintiff attached to his responses have also been considered. Additionally, the amended complaint has been treated as an affidavit, to the

extent its allegations are based upon facts within Plaintiff's personal knowledge, because it is accompanied by a sworn statement made under penalty of perjury. See id.

Plaintiff was convicted of assault with a dangerous weapon in the District Court of Pontotoc County and began serving a two-year sentence for his conviction at LCF in April 2005. DOC Sp. Rept., Attach. 1, p. 7. While Plaintiff was incarcerated at LCF, the District Court of Oklahoma County on April 11, 2005, issued a writ of habeas corpus ad prosequendum ordering the DOC to remit custody of Plaintiff to Sheriff Whestel pending the resolution of four criminal charges filed against Plaintiff in the District Court of Oklahoma County. Id. at Attach 3, pp. 1-2. Plaintiff was received into Sheriff Whetsel's custody on April 29, 2005. Jail Sp. Rept., Ex. 2, p. 1. While Plaintiff was in Sheriff Whetsel's custody, his assault with a dangerous weapon sentence was discharged in February 2006. DOC Sp. Rept. Attach. 1, p. 7. Thereafter, Plaintiff was convicted by the District Court of Oklahoma County of one count of leaving the scene of an accident with personal injury, one count of DUI while involved in a personal injury accident, one count of driving without a license, and one count of failure to carry valid security verification, all after prior convictions. Jail Sp. Rept, Ex. 13, p. 2. He was sentenced to concurrent seven and five-year terms of imprisonment on the leaving the scene and DUI charges. Id., p. 9. On October 18, 2006, Sheriff Whetsel transferred Plaintiff back into DOC custody where he is currently serving his sentences at LCF. DOC Sp. Rept. Attach. 1, p. 9. Plaintiff's amended complaint is based upon events that occurred while he was in Sheriff Whetsel's custody at the Jail from July 30, 2005 through October 18, 2006. Amended Complaint, pp. 4, 15.

Oklahoma County and the DOC have both promulgated similar policies governing the resolution of inmate requests and complaints. Jail Sp. Rept., Ex. 7, p. 21, 35; DOC Defendants' Motion, Ex. 1, p. 2 (Doc. No. 57). To exhaust their respective grievance processes, the inmate must first try to informally resolve the issue by speaking with an appropriate staff member. Jail Sp. Rept., Ex. 7, p. 24; DOC Defendants' Motion, Ex. 1, p. 5. If the issue is not resolved informally, the inmate must submit a written Request to Staff ("RTS") form. Jail Sp. Rept., Ex 7, p. 25; DOC Defendants' Motion, Ex. 1, p. 5. If a complaint is not resolved via the oral complaint or RTS, the inmate must file a written grievance within 15 days of the incident or the date of the response to the RTS. Jail Sp. Rept., Ex 7, p. 25; DOC Defendants' Motion, Ex. 1, p. 6. If the formal grievance procedure does not produce a satisfactory result, the inmate must appeal the result. Jail Sp. Rept., Ex. 7, pp. 27-28; DOC Defendants' Motion, Ex. 1, pp. 9-10. A final ruling on an appeal concludes the internal administrative remedy available to the inmate. Jail Sp. Rept., Ex. 7, p. 28; DOC Defendants' Motion, Ex. 1, p. 11. Both policies also require staff to maintain records of the grievances filed. Jail Sp. Rept., Ex. 7 p. 30; DOC Defendant's Motion, Ex. 1, p. 15.

The summary judgment evidence establishes that during the relevant time frame, Plaintiff filed numerous RTS forms with the Jail, some of which pertained to the allegations of the complaint. Jail Sp. Rept. Ex. 2, pp. 11-18, Ex. 5, p. 4, Ex. 8, p. 6. However, the Jail's records do not contain any grievances or grievance appeals related to the events described in the amended complaint. Similarly, an affidavit from the records custodian of the DOC demonstrates that Plaintiff did not file any grievances related to the

allegations of his complaint. DOC Sp. Rept. Attach. 2. It thus appears that Plaintiff failed to exhaust administrative remedies for all three counts of the amended complaint. See, e.g., Stone v. Albert, No. 06-2336, 2007 WL 4230702, at *3 (10th Cir. Dec. 3, 2007) (noting that uncontradicted affidavit of prison records custodian was sufficient to establish that prisoner failed to exhaust administrative remedies).[3]

In the face of this evidence, Plaintiff bears the burden to establish a fact issue concerning exhaustion. He tries to sustain this burden by making several unsworn allegations in his responses. These allegations do not create a fact issue though because "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e). Instead, the response must set forth "specific facts showing a genuine issue for trial." Id.

Even if Plaintiff's allegations are considered, they do not demonstrate the existence of a genuine issue of material fact. For example, Plaintiff claims that he filed more RTS forms than the special reports show, but that he was unable to get prison staff to answer his RTS forms. Plaintiff's Response to DOC Defendants' Motion, p. 2 (Doc. No. 67); Plaintiff's Additional Response to Oklahoma County Defendants' Motion, pp. 13, 20, 23 (Doc. No. 75). Notably, Plaintiff failed to attach any copies of the RTS or grievances he purportedly filed. These allegations do not show that Plaintiff exhausted administrative remedies because the DOC's regulations provide that an inmate should file a grievance complaining of the staff member's failure to respond to an RTS if his RTS forms go

---

[3] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

unanswered, DOC Defendants' Motion, Ex. 1, p. 6, and the Jail's grievance procedures provide that an inmate should file a grievance if submitting an RTS does not resolve the issue. Jail Sp. Rept., Ex. 7, p. 25. Plaintiff does not contend or demonstrate that he pursued the remedies available to him when staff allegedly refused to respond to his RTS forms. Further, his allegations do not show that Plaintiff availed himself of the full range of administrative remedies because Plaintiff does not contend that he filed or appealed any grievances which must be done to exhaust the prisons' remedies. See Jernigan, 304 F.3d at 1033 (finding that inmate who failed to employ processes available when grievances are unanswered failed to exhaust administrative remedies).

Plaintiff also claims that he filed a grievance concerning his property claim by sending it to GEO's corporate headquarters instead of submitting it to DOC staff, and that he is still awaiting a response for this grievance. Plaintiff's Response to DOC Defendants' Motion, p. 2; Plaintiff's Response to Defendant Miller's Motion, pp. 4, 7 (Doc. No. 74). Plaintiff has not provided a copy of this alleged grievance, but even if it is true that Plaintiff did forward one to GEO, this does not show that Plaintiff exhausted his remedies. An Oklahoma state inmate in a private prison facility must exhaust his administrative remedies according to DOC regulations. See, e.g., Wilson v. Ward, No. 04-6123, 121 Fed. Appx. 809, 811-12 (10th Cir. Feb. 3, 2005) ("Notwithstanding his incarceration at a private prison facility, [Plaintiff] was required to exhaust administrative review from the [DOC] prior to bringing a claim under 42 U.S.C. § 1983."). DOC regulations indicate that grievances should be submitted to "the reviewing authority." DOC Defendants' Motion, Ex. 1, p. 6. The reviewing authority is defined as the "facility

head . . . where the incident occurred . . . ." Id. at 2. Because Plaintiff did not do this and proper exhaustion, not mere substantial compliance, is required, Plaintiff failed to exhaust this claim.

Plaintiff also provided several affidavits from inmates who claim that they were unable to obtain RTS and grievance forms or responses from Jail staff, and has also attached to his responses a "Petition to the Tenth Circuit" that purports to be addressed to the Tenth Circuit Court of Appeals, the Department of Justice, and the American Civil Liberties Union, complaining about the unavailability of RTS and grievance forms at the Jail. Plaintiff's Response to Oklahoma County Defendants' Motion, pp. 5-8, 9-10 (Doc. No. 69); Plaintiff's Response to Oklahoma County Defendants' Motion, pp. 3-6 (Doc. No. 73). This petition, which bears no indicia that it was actually sent or generated at the time it is dated, contains no specific allegations regarding when and where RTS and grievance forms were requested and denied, or which staff members refused to provide the signatories with documents to exhaust their complaints. It is true that a prison official's interference with an inmate's attempt to exhaust administrative remedies renders them "unavailable" and excuses the failure to exhaust a claim, see Jernigan, 304 F.3d at 1032; see also Price v. Shinn, No. 05-1382, 178 Fed. Appx. 803, 805 n.3 (10th Cir. Apr. 28, 2006), cert. denied 127 S. Ct. 223 (2006), but summary judgment evidence raising a genuine issue must be "based on more than mere speculation, conjecture or surmise," and the lack of factual specificity in this petition prohibits it from surpassing this hurdle. Sparks v. Foster, No. 06-1113, 241 Fed. Appx. 467, 473-74 (10th Cir. June 19, 2007) (denying summary judgment where inmate's "allegation of being denied a

grievance form was not supported by sworn pleadings, affidavit, or other evidentiary material."). Bald allegations simply do not raise a fact issue. Further, the "Petition to the Tenth Circuit" states that prisoners could get grievance forms from some officers, and Plaintiff has not shown why he could not have done that.

Finally, without providing an affidavit indicating that additional time to complete discovery and obtain affidavits is needed, Plaintiff draws the Court's attention to Rule 56(f). Plaintiff's Response to Oklahoma County Defendants' Motion, pp. 1-2 (Doc. No. 69); Plaintiff's Response to Oklahoma County Defendants' Motion, p. 1 (Doc. No. 73). However, more specific pleading and information is required to invoke the protections of this rule. See Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1523 n.7 (10th Cir. 1992) (holding Rule 56(f) not satisfied by "[m]erely stating that more discovery is needed . . . .").

As there is no genuine issue of material fact concerning whether Plaintiff exhausted administrative remedies for the claims of his complaint, the Defendants' motions for summary judgment should be granted.

Should the Court adopt this Report and Recommendation, Plaintiff's Count I claims against Officer Cook and Officer Pittman will remain pending as neither of these Defendants have moved for summary judgment or dismissal of Plaintiff's claims.

**RECOMMENDATION**

For the aforementioned reasons, the undersigned recommends:

1. "Defendants Cunningham, Crow, and the Oklahoma Department of Corrections' Motion to Dismiss Plaintiff's Amended Complaint/Motion for Summary Judgment and Brief in Support" [**Doc. No. 57**] be **GRANTED**;

2. "Defendant Miller's Motion to Dismiss/Motion for Summary Judgment and Brief in Support" [**Doc. No. 58**] be **GRANTED**;

3. "Defendant(s) Whetsel, Finley, Willis, Doe and Board of County Commissioners of Oklahoma County's Special Appearance Motion for Summary Judgment and Brief in Support or in the Alternative Motion to Dismiss Plaintiff's Amended Complaint" [**Doc. No. 61**] be **GRANTED**;

In light of the recommended disposition of the foregoing motions,

1. Plaintiff's motion "Requesting for Extension of Time to Amend Complaints and Serve to All Parties" [**Doc. No. 55**] is **DENIED** as moot;[4]

2. "Plaintiff's Apology, Motion to Amend Complaint" [**Doc. No. 59**] is **DENIED**;[5]

3. Plaintiff's motion "Requesting The Honorable Courts to Subpoena Production of Documents from Oklahoma County Detention Center" [**Doc. No. 62**] is **DENIED** without prejudice to resubmission at a later point in this proceeding;

---

[4] Plaintiff's amended complaint has been filed, see Docket Entry No. 54, and all of the Defendants who appeared in the action received copies of the amended complaint and directed their motions for summary judgment towards the amended complaint's allegations.

[5] This motion asks for permission to amend the complaint and name Jason Davis in place of Officer Doe based upon information Plaintiff learned from the Jail's Special Report. Permitting this amendment would be futile as the allegations concerning Officer Davis' alleged assault on Plaintiff on March 7, 2006, resulted in a misconduct charge and disciplinary conviction against Plaintiff. Jail Sp. Rept. Ex. No. 2, p. 9. As the disciplinary conviction has not been set aside, Plaintiff's § 1983 claims for damages against Officer Davis are not cognizable at this time, see Edwards v. Balisok, 520 U.S. 641, 648 (1997), and Officer Davis, proceeding as Officer Doe, moved for summary judgment on Plaintiff's claims so they are covered by the finding that they are unexhausted.

4. Plaintiff's motion "Requesting The Honorable Courts to Subpoena Production of Documents from Lawton Correctional Facility/GEO" [**Doc. No. 63**] is **DENIED**; and

5. Plaintiff's motion "Requesting The Honorable Courts to Allow Plaintiff to add additional response to Defendants Oklahoma County, Sheriff John Whetsel, Willis[,] Findley's Motion for Summary Judgement [sic] and Brief in Support" [**Doc. No. 75**] is **GRANTED**.

The Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by February 20, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

**ENTERED this 31st day of January, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE